STOWERS, Justice.
*343 I. INTRODUCTION
John Diamond III was assaulted and sustained severe injuries while a patron at Platinum Jaxx, a restaurant and bar. He filed suit against Platinum Jaxx, Inc., its landlord, and his assailant, Noel Bungay. A default was entered against Bungay, and the landlord was later granted summary judgment on the claims against it. Diamond proceeded to trial on his remaining claims against Platinum Jaxx. After an eight-day trial, the jury returned a special verdict finding Platinum Jaxx criminally negligent. The jury awarded Diamond $1.85 million in damages and apportioned fault between Platinum Jaxx and Bungay. Platinum Jaxx was found to be 20% at fault for the injuries Diamond received, and Bungay was found 80% at fault. Diamond appeals the superior court's pre-trial order that precluded him from proceeding on a piercing the corporate veil theory. He asks us to reverse the order and remand to allow the superior court to make findings of fact and conclusions of law on the veil piercing issue. He also appeals other pre-trial orders excluding evidence, as well as the superior court's post-judgment cost award allocation.
Because Diamond did not plead the veil piercing issue, we affirm the superior court's order. The superior court also did not abuse its discretion by excluding the challenged evidence and by allocating costs according to the percentage of fault of each defendant. We therefore affirm the court's pre-trial orders and post-judgment cost award.
II. FACTS AND PROCEEDINGS
In October 2013 John Diamond, III and his girlfriend were patrons at Platinum Jaxx, a restaurant and bar in downtown Anchorage. While the two were sitting at the bar, another patron, Noel Bungay, hit Diamond in the head with a pint glass, causing severe disfigurement. In June 2015 Diamond and his girlfriend filed suit against Platinum Jaxx, Inc., its landlord, La Mexicana, Inc., and Bungay. Diamond alleged that (1) Platinum Jaxx violated the dram shop statute by serving alcohol to a "drunken person,"[1] (2) Platinum Jaxx was negligent in the operation of its premises and failed to exercise reasonable care to protect its patrons, (3) La Mexicana was negligent in its duties as landlord and owner of the property, (4) Bungay assaulted Diamond causing serious physical injury, and (5) all parties negligently caused the girlfriend to suffer severe emotional distress and loss of consortium. By the time suit was filed, the bar had been closed for one year, and Platinum Jaxx, Inc. was subsequently involuntarily dissolved in September 2015.
In May 2016 the superior court entered a default against Bungay. In June 2017 the court granted summary judgment against the girlfriend's claims for emotional distress and loss of consortium. In July the court granted La Mexicana's motion for summary judgment on the landlord liability claim, and the remaining parties - Diamond and Platinum Jaxx - proceeded to a jury trial.
Prior to trial, in February 2017, Diamond's attorney sent a letter to Platinum Jaxx's attorney, stating: "Plaintiffs did not plead piercing the corporate veil as a count in the Complaint.[2 ] Nevertheless, for notice *344 purposes, please be advised that Plaintiffs intend to argue at trial that [the] corporate veil should be pierced." But Diamond did not seek to amend his complaint to plead a veil piercing theory or to join the individual owners of Platinum Jaxx as defendants. Diamond later sought to introduce evidence of Platinum Jaxx's lack of liability insurance to show that Platinum Jaxx was undercapitalized and therefore its corporate veil should be pierced. Platinum Jaxx moved to preclude the evidence and argued that Diamond did not plead a veil piercing theory. In two pre-trial orders the superior court precluded Diamond from mentioning liability insurance at trial and stated that it would "not allow [Diamond] to proceed on a piercing the corporate veil [theory] to pursue claims against the individual, non-named officers or shareholders of Platinum Jaxx, Inc." The court reiterated at trial that Diamond was precluded from proceeding on a veil piercing theory because "it wasn't pled" and "would be grossly prejudicial ... this late in time."
The jury returned a special verdict in favor of Diamond, finding that (1) Platinum Jaxx, with criminal negligence, violated the dram shop statute; (2) Platinum Jaxx was negligent as a possessor of land; (3) Platinum Jaxx's negligence was a legal cause of harm to Diamond; (4) Diamond suffered severe disfigurement and damages of $1.85 million; and (5) Platinum Jaxx was 20% at fault and Bungay was 80% at fault. Final judgment was entered against Bungay and Platinum Jaxx in September 2017, with costs awarded in October. The judgment against Platinum Jaxx was for $331,332.93 in damages (20% of Diamond's total damage award)[3] and $2,619.34 in costs (20% of Diamond's total allowable costs).
Diamond appeals pre-trial orders by the superior court that (1) precluded him from proceeding on a piercing the corporate veil theory, (2) excluded evidence related to the veil piercing theory, and (3) excluded evidence related to Platinum Jaxx's reputation that Diamond argues might have increased the jury's percent allocation of fault to Platinum Jaxx. Diamond also appeals the superior court's award of costs based on a percentage-of-fault formula. Diamond requests that we reverse the aforementioned orders and remand for specific findings relating to his veil piercing theory. Platinum Jaxx did not participate in this appeal.
III. STANDARDS OF REVIEW
The superior court precluded Diamond from proceeding on a piercing the corporate veil theory because it was not pleaded. Whether a party provided adequate notice to argue a claim is a question of law we review de novo,[4] and "we will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[5]
The superior court excluded evidence related to Diamond's veil piercing theory and to Platinum Jaxx's reputation. We review trial court "decisions to admit or exclude evidence under the abuse of discretion standard."[6] We will find that a trial court abused its discretion if "the reasons for the exercise of discretion are clearly untenable or unreasonable."[7]
The superior court denied Diamond's requested reallocation of costs. "We review a trial court's cost award for abuse of discretion."[8] "When a review of an award of ... costs requires an interpretation of the *345 Alaska Civil Rules, we apply our independent judgment."[9]
IV. DISCUSSION
A. The Superior Court Did Not Err By Precluding Diamond From Proceeding On A Piercing The Corporate Veil Theory.
In its July 2017 pre-trial order the superior court stated that it would "not allow [Diamond] to proceed on a piercing the corporate veil [theory] to pursue claims against the individual, non-named officers or shareholders of Platinum Jaxx, Inc." Diamond argues that "[i]n ordering that [he] was precluded from proceeding on a veil piercing theory, the trial court did not analyze the veil piercing factors on the record," and that the court "failed to make any findings of fact or conclusions of law related to its corporate veil piercing order." He requests that we "reverse the trial court's order related to corporate veil piercing ... [and] remand this case to the trial court for the purpose of making detailed and explicit findings."
Diamond is correct that the superior court did not make findings of fact or conclusions of law in its order - but it did not need to. The court's explanations at trial - that the theory "wasn't pled" and that allowing the theory in "would be grossly prejudicial ... this late in time" - are adequate to give us "a clear understanding of the basis of the trial court's decision."[10] The question before us instead is whether Diamond adequately raised the veil piercing issue.
Diamond did not plead a piercing the corporate veil theory in his complaint, and he did not seek to file an amended complaint asserting this claim at any point in the proceedings. Diamond argues that his February 2017 letter to Platinum Jaxx provided sufficient notice to overcome his failure to plead, and he relies on L.D.G., Inc. v. Brown for the proposition that "if a party has notice of the conduct for which the opposing party is seeking relief, the opposing party may recover under any theory supported by the evidence."[11]
In L.D.G. we considered whether failure to plead the veil piercing theory was "sufficient to keep the question from going to the jury."[12] The plaintiff in L.D.G. indicated "six months before the start of trial[ ] that he was prepared to argue that L.D.G.'s corporate veil should be pierced," and he "submitted supplemental proposed jury instructions ... pertaining to piercing the corporate veil, accompanied by a notice indicating that ... he would also argue that the corporate veil should be pierced."[13] We held that the parties "were on sufficient notice of [the plaintiff's] piercing the corporate veil theory."[14] But L.D.G. is distinguishable because the plaintiff originally filed suit against both L.D.G. and the sole shareholder of the company personally.[15] The sole shareholder was thus on notice that the plaintiff sought to hold him personally liable. Diamond's complaint did not name any of the individual owners of Platinum Jaxx, and he never sought to join the owners as parties to the suit. They therefore were not required - nor did they have the opportunity - to defend themselves individually.
We also evaluated failure to plead in Alakayak v. British Columbia Packers, Ltd. , reviewing a superior court ruling "that the plaintiffs did not properly plead corporate 'alter ego' claims" and were therefore precluded from conducting discovery on those claims.[16] While we acknowledged that the complaint "did not specifically request piercing of the corporate veil," we also observed that "it did name the [parent corporations] as defendants, and it stated that it would seek *346 recovery from those defendants for the actions of the subsidiaries."[17] We concluded that because the parent corporations had "notice of the conduct for which the opposing party [was] seeking relief," the plaintiffs' "alter ego" theory was therefore adequately pleaded.[18] Alakayak is thus also distinguishable because the parent corporations "were independently sued ... and the complaint expressly alleged that they were 'responsible for the liabilities' of their wholly owned subsidiaries."[19] Diamond's complaint contains no such language that would put the individual owners of Platinum Jaxx on notice that they might be held personally liable.
In both L.D.G. and Alakayak we relied on McCormick v. City of Dillingham for the proposition that notice can be sufficient to overcome the failure to plead.[20] In McCormick we considered whether a party who originally brought suit on a de facto partnership theory could later proceed on a piercing the corporate veil theory.[21] We concluded that because the initial complaint named McCormick as the sole defendant, he was on notice that he might be held personally liable.[22] Accordingly, L.D.G. , Alakayak , and McCormick all involved some form of actual notice - in the pleadings, to a party to the case - that the plaintiff sought to hold the party liable.
Here, Diamond's complaint provides no notice to the individual owners of Platinum Jaxx that they might be held personally liable. And because the individual owners were not parties to Diamond's suit against Platinum Jaxx, Diamond's February 2017 letter to Platinum Jaxx's counsel did not provide the owners notice of Diamond's intent to pierce the corporate veil. Being actually named as a party is important. A named party has the right to assert affirmative defenses, counterclaims, and cross-claims and to conduct discovery, file motions, and make its own defense at trial. And a named party may be held personally liable for its share of damages. It is difficult to understand how Diamond believes he could pierce Platinum Jaxx's corporate veil and obtain a judgment against Platinum Jaxx's individual owners when they were not joined as parties to the action.[23]
Diamond also did not pursue other opportunities to raise his veil piercing theory. He presumably became aware of the need to pierce the corporate veil by at least February 2017, the date his attorney sent the letter, yet he did not seek to amend his complaint to plead a veil piercing theory or to join the individual owners of Platinum Jaxx as defendants.[24]
Because Diamond did not plead a veil piercing claim, the claim was not adequately raised. The individual owners of Platinum Jaxx were not parties to the case and therefore did not receive notice that they might be held personally liable. The superior court did not err in precluding this claim for failure to plead. We also conclude that the superior court did not abuse its discretion in concluding it would be "grossly prejudicial" to allow Diamond to introduce this theory so late in the proceedings.[25] We affirm the superior court's order precluding Diamond from proceeding on a piercing the corporate veil theory.
*347 B. The Superior Court Did Not Abuse Its Discretion By Excluding Evidence Related To Piercing The Corporate Veil.
Diamond argues that the superior court erred by (1) precluding mention of liability insurance and (2) precluding mention of Wallie Scott Vierra, a former owner of Platinum Jaxx.
Under Alaska Evidence Rule 411, evidence of liability insurance "is not admissible upon the issue whether the person acted negligently or otherwise wrongfully."[26] But Diamond argues he "sought to offer the evidence not for the issue whether Platinum Jaxx acted negligently or otherwise wrongfully, but rather to demonstrate that it was undercapitalized and subject to corporate veil piercing." But whether Platinum Jaxx was undercapitalized was not at issue in Diamond's case. Because a veil piercing claim was not pleaded, and therefore was not at issue, this evidence was not relevant under Alaska Evidence Rule 402,[27] was not admissible under Evidence Rule 411,[28] and was unfairly prejudicial under Evidence Rule 403.[29] The superior court did not abuse its discretion by excluding this evidence.
Vierra was a former owner of Platinum Jaxx who was convicted in 2008 of money laundering and drug distribution and forced to forfeit his 25% ownership interest in the corporation. Diamond intended to use evidence related to Vierra, the history of Platinum Jaxx's operation, and its ownership structure to pierce the corporate veil. But again, Diamond did not plead this claim and therefore this evidence was not relevant under Evidence Rule 402 and was unfairly prejudicial under Rule 403. The superior court did not abuse its discretion by excluding this evidence.
We affirm the superior court's orders excluding evidence related to piercing Platinum Jaxx's corporate veil because this evidence was not relevant to the trial on Platinum Jaxx's negligence.
C. The Superior Court Did Not Abuse Its Discretion By Excluding Evidence Related To Platinum Jaxx's Reputation .
1. Media coverage of shootings outside Platinum Jaxx
Diamond argues that the superior court erred by excluding media evidence regarding the reputation of Platinum Jaxx. He asserts that media coverage of prior shootings outside Platinum Jaxx demonstrates (1) that Platinum Jaxx had notice that violent acts had occurred, (2) that it was foreseeable that such acts might occur again, and (3) that Platinum Jaxx had a duty to take precautions and provide reasonable protections to its patrons. Diamond argues this "evidence would likely have increased the jury's allocation of fault to Platinum Jaxx" and that we should reverse the superior court's exclusion of this evidence and remand for the court to make specific findings under Alaska Civil Rule 52.[30]
The two shootings in question occurred in 2011 and 2012, and both took place outside and off the premises of Platinum Jaxx. This evidence would not be relevant to the security measures in place inside Platinum Jaxx over a year later or to the propensity for violence inside the bar, which is where Diamond's assault took place. And Evidence Rule 404 specifically excludes evidence of prior bad acts to show a general propensity to act in conformity therewith.[31] It was reasonable for the superior court to conclude *348 that any relevance of the evidence would likely have been substantially outweighed by the risk of unfair prejudice and the potential for the jury to use the evidence for an improper purpose[32] - i.e., to conclude that because Platinum Jaxx may have been negligent in the past that it was also negligent on the night of Diamond's assault.[33] The superior court did not abuse its discretion by excluding media coverage evidence.
2. Cherie Lee Burno's testimony
Diamond also challenges the superior court's preclusion of testimony by Cherie Lee Burno, an employee of Platinum Jaxx during the time period when Diamond was assaulted by Bungay. Diamond sought to admit Burno's testimony to demonstrate that (1) Platinum Jaxx was a dangerous place, (2) it was on notice of the violence within its bar, and (3) its management of the bar was negligent given the foreseeability of harm to a patron. He asserts that her testimony "would likely have increased the jury's allocation of percentage of fault to Platinum Jaxx."
But Burno was not present at the time of Diamond's assault and therefore did not have "personal knowledge of the matter" as required by Evidence Rule 602,[34] and she could not share an opinion "rationally based on [her] perception" as required by Evidence Rule 701.[35] Of greater significance, her testimony about prior acts of violence within the bar may have been relevant to Platinum Jaxx's notice and duty, but as with the media coverage evidence, her testimony would be inadmissible propensity evidence under Rule 404(b). It was reasonable for the superior court to conclude that any relevance of her testimony would have been substantially outweighed by the risk of unfair prejudice and the potential for the jury to use the evidence for an improper purpose.[36] The superior court did not abuse its discretion by excluding Burno's testimony.
D. The Superior Court Did Not Abuse Its Discretion By Awarding Diamond's Costs Based On Percentage Of Fault .
Diamond argues that the superior court abused its discretion by awarding his costs against Bungay and Platinum Jaxx in accordance with each tortfeasor's percentage of fault. He posits that equitable apportionment in fact "would require only that Bungay be responsible for costs incurred in proving damages, not those incurred in proving Platinum Jaxx's liability." Because the majority of Diamond's litigation costs were associated with proving Platinum Jaxx's liability, not Bungay's, he argues it would be unjust to require the defaulted defendant to subsidize the defendant which litigated the case. Diamond requests that we reverse the superior court's order denying his motion for review of the clerk's costs award and allocate the majority of costs to Platinum Jaxx.
While Diamond's motion to reallocate costs was filed late and failed to meet the standard for excusable neglect, the superior court nevertheless *349 reviewed the motion on the merits before denying it; the court found that the clerk properly allocated costs based on the jury award. Under Civil Rule 79, "[i]n a case in which damages are apportioned among the parties ... costs must be apportioned and awarded according to the provisions of Civil Rule 82(e)."[37] Rule 82(e) provides that fees awarded must "be apportioned among the parties according to their respective percentages of fault."[38] The clerk therefore allocated 80% of the costs to Bungay and 20% of the costs to Platinum Jaxx in accordance with the jury's allocation of fault to each party.
Diamond argues that Civil Rule 94 "permits the relaxation of the [civil] rules to advance justice"[39] and that it would be unjust to hold Bungay liable for the majority of Diamond's costs associated with litigating against Platinum Jaxx. We have never held that the superior court has the discretion under Rule 94 to alter the allocation of costs if it believes that injustice would otherwise occur, and it is not necessary for us to do so here. We will assume without deciding that the superior court has that discretion. But under an abuse of discretion standard we will uphold an award of attorney's fees and costs "unless it is manifestly unreasonable."[40] Costs were correctly awarded as provided by Rules 79 and 82(e), and we conclude that the superior court's cost award was not manifestly unreasonable and did not result in manifest injustice. We affirm the court's order and the costs award.
V. CONCLUSION
The superior court's pre-trial orders and its post-judgment costs award are AFFIRMED.

See AS 04.16.030(a) ("A licensee, an agent, or employee may not with criminal negligence (1) sell, give, or barter alcoholic beverages to a drunken person; .... [or] (3) allow a drunken person ... to consume an alcoholic beverage within licensed premises ....").

Generally, "courts seek to recognize and uphold 'the principles that the corporation exists as a separate legal entity and that owner liability for the debts of the corporation is limited.' " L.D.G., Inc. v. Brown , 211 P.3d 1110, 1125 (Alaska 2009) (quoting Pyramid Printing Co. v. Alaska State Comm'n for Human Rights , 153 P.3d 994, 1000 (Alaska 2007) ). But the corporate veil may be pierced - and the corporate status disregarded - to hold the individual owners liable for the acts of the corporation "if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime," or if the "corporation is nothing more than a 'mere instrument' of a shareholder." Id. (first quoting Elliott v. Brown , 569 P.2d 1323, 1326 (Alaska 1977) ; and then quoting Uchitel Co. v. Telephone Co. , 646 P.2d 229, 235 (Alaska 1982) ).

This amount is based on 20% of $1,567,750 - the damages award was reduced from $1.85 million based on statutory tort caps - plus prejudgment interest of $17,782.93. See generally AS 09.17.010.

Alakayak v. British Columbia Packers, Ltd. , 48 P.3d 432, 448 (Alaska 2002).

Healy Lake Vill. v. Mt. McKinley Bank , 322 P.3d 866, 871 (Alaska 2014) (quoting John v. Baker , 982 P.2d 738, 744 (Alaska 1999) ).

Loncar v. Gray , 28 P.3d 928, 930 (Alaska 2001).

Burke v. Maka , 296 P.3d 976, 980 (Alaska 2013) (quoting Lewis v. State , 469 P.2d 689, 695 (Alaska 1970) ).

Alexander v. State, Dep't of Corr. , 221 P.3d 321, 324 (Alaska 2009).

Kozevnikoff v. Tanana Vill. Council , 89 P.3d 757, 759 (Alaska 2004).

Beaulieu v. Elliott , 434 P.2d 665, 670 (Alaska 1967).

211 P.3d 1110, 1124 (Alaska 2009) (quoting McCormick v. City of Dillingham , 16 P.3d 735, 743 (Alaska 2001) ).

Id. at 1124-25.

Id.

Id. at 1125.

Id. at 1116.

48 P.3d 432, 459 (Alaska 2002).

Id. at 460.

Id. (quoting McCormick v. City of Dillingham , 16 P.3d 735, 743 (Alaska 2001) ).

Id.

McCormick , 16 P.3d at 743.

Id.

Id.

Cf. Alaska R. Civ. P. 19 ("A person ... shall be joined as a party in the action if ... the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may ... as a practical matter impair or impede the person's ability to protect that interest ....").

See Alaska R. Civ. P. 15(a) ("[A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.").

While Diamond first asserted his veil piercing theory in the February 2017 letter to Platinum Jaxx, it does not appear that he argued this theory before the superior court until June 2017 - only a month and a half before trial - in his opposition to Platinum Jaxx's motion to preclude evidence of liability insurance.

Alaska R. Evid. 411.

Alaska R. Evid. 402 ("Evidence which is not relevant is not admissible.").

Alaska R. Evid. 411 ("Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully.").

Alaska R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ....").

We do not understand why Diamond asks us to remand for the superior court to make specific findings of fact. The relief Diamond would actually need would be for us to reverse the court's orders and judgment and remand for a new trial.

Alaska R. Evid. 404(b)(1).

Alaska R. Evid. 403.

Cf. Oakly Enters., LLC v. NPI, LLC , 354 P.3d 1073, 1083-84 (Alaska 2015) ("Oakly Enterprises argues that the environmental report was admissible ... to show that the spill ... was due to 'NPI's corporate culture [which] allowed for polluting' .... [But] [t]he proposed use of the [environmental report] can only reasonably be characterized as to show a propensity - i.e., because NPI was responsible for pollution found at a different location, it must be responsible for the pollution on [another] property three years earlier. ... [T]he superior court, in excluding the report, further noted that it would confuse the jury, likely because of its remoteness from the events at issue in terms of both time and geography. For all these reasons, we see no abuse of discretion in the superior court's exclusion of the report." (third alteration in original)).

Alaska R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

Alaska R. Evid. 701 ("If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue.").

If what Diamond really hoped for was to inflame the jury's passion against Platinum Jaxx, that is precisely the type of improper effect the Evidence Rules are intended to prohibit. See Alaska R. Evid. 403.

Alaska R. Civ. P. 79(h).

Alaska R. Civ. P. 82(e).

Alaska R. Civ. P. 94 ("These rules are designed to facilitate business and advance justice. They may be relaxed or dispensed with by the court in any case where it shall be manifest to the court that a strict adherence to them will work injustice.").

Circle De Lumber Co. v. Humphrey , 130 P.3d 941, 946 (Alaska 2006) ; see also Dickerson v. Goodman , 161 P.3d 1205, 1207 (Alaska 2007) ("A refusal to apply Civil Rule 94 is reviewed for abuse of discretion.").