NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| AAA CONCRETE CONSTRUCTION, INC., | ) ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| RICHARD HUMPHREY, | ) |
| | ) |
| Appellee. | ) |
| | ) |
| | ) |
| RICHARD HUMPHREY, | ) |
| | ) |
| Cross-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| MICHAEL L. MITCHELL and AAA CONCRETE CONSTRUCTION, INC., | ) ) |
| | ) |
| Cross-Appellees. | ) |
| | ) |

Supreme Court Nos. S-17976/18045

Superior Court No. 3AN-18-07047 CI

<u>MEMORANDUM OPINION AND JUDGMENT</u>[*]

No.1949 – February 22, 2023

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una S. Gandbhir, Judge.

Appearances: John C. Pharr, Law Offices of John C. Pharr, P.C., Anchorage, for Appellant/Cross-Appellees. Daniel W. Hickey, Gruenstein, Hickey, Havelock & Duffy, Anchorage, for Appellee/Cross-Appellant.

---

[*]     Entered under Alaska Appellate Rule 214.

Before: Winfree, Chief Justice, Maassen, Borghesan, and Henderson, Justices. [Carney, Justice, not participating]

## I.   INTRODUCTION

This appeal arises from a dispute about an oral employment contract between a construction company and a project manager. The company terminated the project manager's employment at the end of his first construction season, and the parties then disputed whether their contract included off-season and bonus pay. Following a bench trial the superior court found that an oral employment contract existed in line with the project manager's testimony, but dismissed the project manager's claim against the company's owner in his individual capacity. The company appeals the court's findings about the contract, its terms, and the company's liability to the project manager for additional pay. The project manager cross-appeals the court's dismissal of his claim against the company's owner. For the reasons that follow, we affirm the superior court's rulings and judgment.

## II.   FACTS AND PROCEEDINGS

### A.   Background Facts

Richard Humphrey and Michael Mitchell developed a business relationship over many years working in asphalt and concrete subcontracting in the Anchorage area. Mitchell was the president and majority owner of AAA Concrete Construction, Inc. since incorporating it in 2013.[1] Humphrey retired from an asphalt paving company in mid-June 2016 and soon began working as a project manager for AAA Concrete. Humphrey worked and was paid for about 17 weeks at AAA Concrete. Following a mid-October disagreement, Mitchell fired Humphrey.

---

[1]   We refer to both Mitchell and AAA Concrete Construction as "AAA Concrete" unless the context otherwise requires.

Humphrey's employment terms with AAA Concrete were not in writing beyond an employment application he appears to have filled out after he was hired. Humphrey's application identified his "Desired Salary" as $1,000 weekly for one year and a "25,000 EOY bonus." Soon after his termination Humphrey sent an initial demand for unpaid wages "under the terms of his contract with AAA Concrete." In May 2018 Humphrey sued both Mitchell and AAA Concrete for breach of contract and lost wages. The parties' primary disagreement at trial was whether Humphrey had been employed at will or for at least a one-year term at $1,000 weekly and a minimum $10,000 bonus.

## B. Trial Proceedings

### 1. Evidence of Humphrey's employment contract and its terms

Humphrey testified to having agreed with Mitchell that AAA Concrete would employ Humphrey as a project manager for a minimum of two construction seasons (mid-April to mid-October) at an annual $52,000 salary paid $1,000 weekly. Humphrey testified that they also had agreed he would receive a guaranteed annual bonus — between $10,000 and $25,000 the first year and at least $25,000 the next — with the amount subject to Mitchell's discretion based on AAA Concrete's "gross business" and Humphrey's performance. Humphrey asserted that this was a fair arrangement because "it provided him with a steady stream of income" for the year and benefitted AAA Concrete by "deferr[ing] cash flow away from the construction season itself when . . . things were particularly tight." Humphrey noted that this salary was much lower than what he previously had earned working in asphalt paving but that he had accepted the salary and declined overtime pay to help him transition to seasonal work and because of the allegedly promised bonus.

Mitchell testified that, although Humphrey had asked for the terms to which Humphrey testified, Mitchell had never agreed to them. Mitchell asserted that the agreement was for Humphrey to work as a project manager for AAA Concrete for

"$1,000 in gross salary per week along with a vehicle allowance of $500 a month, a gas credit card, and a cell phone."

Pay stubs reflect that Humphrey received $1,000 gross salary weekly, with an additional $1,500 total vehicle allowance over the season. Kristina McDaniel, who was a 5% owner of AAA Concrete and took care of accounting, payroll, and taxes for the relevant time period, testified to her understanding that Humphrey was to be paid "$1,000 a week . . . . [a]s long as he was employed." McDaniel later testified that Humphrey was to receive $1,000 weekly while "physically working there." She said she did not recall that she was supposed to send him weekly checks after the construction season. McDaniel affirmed that Humphrey and Mitchell had "talked about a year-end bonus . . . if things went well" but said that she did not know how much it was supposed to be. Mitchell denied having talked to McDaniel "about giving . . . Humphrey a bonus."

### 2. Ronald Stoops's testimony

Ronald Stoops, a construction company project manager, testified on Humphrey's behalf. Stoops said he was a "senior project manager and estimator" and had done that work in Alaska for about 25 years. He then was asked to describe what is involved in "bidding on and planning for projects that involve a combination of dirt work, concrete work and paving." AAA Concrete objected to this testimony because Humphrey had not designated Stoops as an expert witness. After responding that there had been no prior intent to offer Stoops as an expert witness, Humphrey's counsel said "he has a degree of expertise and the court can decide if he — assuming he testifies into some opinions — whether he's qualified or not." The court responded that "it doesn't sound like he's being offered as an expert" and allowed the testimony.

Stoops testified further that he had known Humphrey for "quite awhile," had worked with Humphrey many times, was familiar with Humphrey's capabilities in the industry, and considered Humphrey an expert in asphalt work. Stoops also said that

he knew Mitchell from subcontracting with AAA Concrete for one job prior to Humphrey working there and other jobs while Humphrey worked there.

Stoops then was asked, based on his experience, to give a salary range for someone with Humphrey's knowledge and experience. AAA Concrete objected to the question, asserting that it was asking for expert testimony that had not been disclosed, while acknowledging that Stoops had "expert knowledge" and "appears to be well qualified." The court and counsel then engaged in a colloquy about Stoops's testimony; AAA Concrete asserted that the question called for expert witness testimony even though Stoops was not "a paid expert witness," and Humphrey asserted that Stoops was not a retained expert, that the question called for fact testimony based on Stoops's specialized knowledge, and that a foundation had been made about Stoops's "range of knowledge and experience."[2] The court concluded that "at this point" the particular question fell under allowable lay opinion testimony.[3] Stoops then testified that Humphrey's

---

[2]    *See* Alaska R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness's own testimony. This rule is subject to the provisions of Rule 703, relating to opinion testimony by expert witnesses."); Alaska R. Evid. 703 ("The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing.").

[3]    *Compare* Alaska R. Evid. 701 ("If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue."), *with* Alaska R. Evid. 702(a) ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.").

experience was similar to Stoops's own experience and described his own compensation package.

Stoops next was asked about the knowledge needed to "bid on and plan for the concrete portion of the work that's typically required in projects." AAA Concrete again objected that the question called for expert testimony from a lay witness who was not properly disclosed as an expert witness. The superior court overruled the objection, and Stoops answered the question. Stoops was asked whether "Humphrey's experience and background qualifie[d] him to . . . bid on and plan" a concrete project. AAA Concrete objected for lack of foundation.[4] The court sustained the objection, and Humphrey asked questions providing foundation for Stoops's knowledge and the basis for his answer. Before returning to the question of Humphrey's qualifications, Stoops was asked "what one needs to know to properly monitor and supervise all three phases of these types of projects, the dirt work, the concrete work, and the paving" and whether "anything special about the concrete work in terms of knowledge and experience [is] required to bid on and supervise concrete portions of these projects." AAA Concrete did not object to these questions, and Stoops answered them. Stoops later was asked whether Humphrey was qualified to bid on concrete jobs, and AAA Concrete objected that the question had been "asked and answered." The court overruled the objection, and Stoops answered that "Humphrey, from his knowledge and experience" was qualified to "evaluate the bids on the concrete portion of" projects.

### 3. Claim against Mitchell individually

During opening statements Mitchell had asserted for the first time that he "should not have been named as a party" because Humphrey's contract was with AAA Concrete. On the second day of trial, after Humphrey finished presenting evidence,

---

[4] *See supra* note 2.

Mitchell moved to dismiss the claim against him. Mitchell argued that he was acting as a representative of AAA Concrete when he made the "alleged contract" and that Humphrey was paid by AAA Concrete. Humphrey briefly argued that he made the employment agreement with Mitchell, not AAA Concrete, and that there was "sufficient evidence to suggest [Mitchell had] personally obligated himself" but "at the end of the day" it probably did not matter because AAA Concrete likely had more assets. The court denied Mitchell's motion to dismiss.

### 4. Circumstances of Humphrey's termination

The parties disagreed about the reason for Humphrey's termination. Both Mitchell and Humphrey testified to an incident involving an AAA Concrete employee whom Humphrey had recruited to help with a personal project. They disagreed about the number of days Humphrey utilized the employee's help, whether Humphrey told the employee to report the work on his AAA Concrete time card, and whether Humphrey paid the employee for his help.

The parties agreed that Mitchell was upset and that he confronted Humphrey. Mitchell said he believed that Humphrey had told the employee to put the time on his AAA Concrete time card and that this amounted to theft. Mitchell said that he also was upset about an unrelated incident involving change orders causing AAA Concrete to receive late payment from another construction company and that he believed Humphrey had made disparaging comments about Mitchell "to employees and other acquaintances in the industry."

The parties agreed that Mitchell fired Humphrey in mid-October.

### C. Superior Court's Decision

The superior court found in Humphrey's favor and held that he was "entitled to the remainder of his payment for a full year, plus a bonus for that year." Because Humphrey had found other employment for the following year, the court found

he was "not entitled to payment or a bonus for that year." The court awarded Humphrey "$26,000 for the period of October 15, 2016 to April 14, 2017 and $10,000 for a bonus during the 2016 construction season, for a total of $36,000 in damages."

The superior court found that Humphrey's testimony was "more credible as to the terms of [the] contract." The court found that Humphrey was the more sophisticated party and that his "testimony was consistent with that of witnesses regarding his experience and likely expectations." The court was particularly compelled by Stoops's testimony, stating that his "experience and perspective lends his testimony credibility and reliability."

## D.    AAA Concrete's Reconsideration Motion

AAA Concrete moved for reconsideration on two issues. First, it asserted that Mitchell should have been dismissed from the litigation because Humphrey "failed to introduce sufficient evidence to pierce the corporate veil." Second, AAA Concrete asserted that because Humphrey had worked only 17 weeks in 2016, not the full 26 weeks typical of the construction season, "he was . . . entitled to [only] 17 weeks of pay after he [was] terminated for the season."

Humphrey responded that the corporate veil defense was not properly raised and thus was waived. Humphrey alternatively argued that piercing the corporate veil was appropriate because: "Mitchell own[ed] virtually all of the stock of the corporation, [was] the sole officer/director, . . . in effect [he] simply used the corporate form as an extension of himself[,] . . . [and] the corporation did not have sufficient money to pay [Humphrey], supporting the fact that the corporation was grossly undercapitalized . . . ." Humphrey rebutted AAA Concrete's argument that he was entitled to only an additional 17 weeks of pay as contrary to the terms of the oral agreement that the court had found to exist.

AAA Concrete replied that Mitchell had no obligation to "assert an affirmative defense of piercing the corporate veil." Rather, it argued, Humphrey had the burden of proving "that the contract he made was with [Mitchell] and not with AAA Concrete," and Humphrey had "failed to prove [Mitchell] was personally liable." AAA Concrete contended, without citation, that Humphrey had "acknowledged that he should only be paid for 17 weeks in the winter of 2016-2017" and that the contract was reciprocal such that if he worked 17 weeks during the construction season he would get "17 weeks of payment in the off season."

The superior court granted reconsideration in part. Quoting a United States Supreme Court case, it reasoned that "[p]iercing the corporate veil is a drastic remedy that is 'the rare exception, applied in the case of fraud or certain other exceptional circumstances' " which were not present in this case.[5] Specifically, the court declined to consider piercing the corporate veil unless "it turns out that there is an inability to collect on a judgment in the future and the circumstances of the inability to collect lead to [such] a necessity." The court also was not persuaded that Humphrey's recovery should be reduced to payment for 17 weeks in the off season because it had found "that the parties negotiated an amount for each year, amortized over an expected timeframe."

AAA Concrete appeals and Humphrey cross-appeals.[6]

---

[5]    *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003).

[6]    The parties' briefing expresses some confusion about whether we properly have appellate jurisdiction over this case in light of certain issues not addressed in the superior court's amended order. Despite collateral matters of attorney's fees and prejudgment interest not yet being decided, we properly have jurisdiction because the court reached a final judgment. *See* Alaska R. App. P. 204(a)(5) (setting out timing of costs, prejudgment interest, and attorney's fees awards); *see also Martech Constr. Co. v. Ogden Env't Servs., Inc.*, 852 P.2d 1146, 1153 (Alaska 1993) ("The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case,
(continued...)

## III. AAA CONCRETE'S APPEAL

AAA Concrete argues that the superior court "erred in overruling an objection to and admitting the expert testimony of Ronald J. Stoops as a lay opinion" without required expert witness disclosures. AAA Concrete also argues that "[t]he trial court erred [by] awarding [Humphrey] $36,000 in its Order and Decision" and by "denying [Mitchell's] motion for reconsideration on working 17 weeks instead of 26."

### A. The Superior Court Did Not Err By Allowing Stoops's Testimony.[7]

AAA Concrete asserts that the court should not have allowed Stoops's lay opinion testimony addressing: (1) whether Humphrey's experience qualified him to be AAA Concrete's project manager; (2) the knowledge required to bid on and complete construction projects; and (3) the typical salary range in the industry for someone in Humphrey's position. These issues were relevant to establishing whether the oral

---

[6] (...continued) '. . . one which ends litigation on the merits and leaves nothing for the court to do but execute the judgment.' " (omission in original) (quoting *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972))); *Asher v. Alkan Shelter, LLC*, 212 P.3d 772, 783 (Alaska 2009) (explaining superior court lost jurisdiction over "matters directly or necessarily involved in the matter under review" once appeal was filed, though retaining "jurisdiction over collateral matters" (quoting *Heppinstall v. Darnall Kemna & Co.*, 851 P.2d 78, 79 n.3 (Alaska 1993) (indicating attorney's fees are one such collateral matter))), *abrogated on other grounds by Shaffer v. Bellows*, 260 P.3d 1064, 1068-69 (Alaska 2011).

[7] We review "[t]he [superior] court's decision to admit expert testimony . . . for abuse of discretion, but where the admissibility of expert testimony turns on a question of law, we apply our independent judgment." *Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008). A party challenging the admission of evidence on appeal must demonstrate both that the evidence was admitted in error *and* "that the error was harmful or prejudicial." *Id.* at 1147. We will find that an error was harmful or prejudicial if "on the whole record the error would have had a substantial influence on the verdict of a jury of reasonable laymen." *Id.* at 1147-48 (quoting *Dalkovski v. Glad*, 774 P.2d 202, 207 (Alaska 1989)).

contract between Humphrey and AAA Concrete reasonably could have the terms Humphrey described, and the superior court expressly relied on Stoops's testimony. We agree with AAA Concrete that, had the superior court erred by allowing and relying on this testimony, it might be prejudicial error requiring reversal and remand for a new trial.[8] But we see no error.

We first note that in addition to allowable lay witness opinion testimony and allowable expert witness opinion testimony,[9] hybrid witness opinion testimony is allowable.[10] A hybrid witness is a person with both personal knowledge of facts relevant to a matter and sufficient knowledge and background to give an expert opinion based on those facts.[11] Routine examples are treating physicians who may testify to injuries and treatment and render related expert medical opinions[12] and police officers who may testify to investigations and render related expert opinions.[13] It seems evident that Stoops

---

[8]    *See, e.g.*, *Thompson v. Cooper*, 290 P.3d 393, 400 (Alaska 2012) (remanding for new trial because testimony "could have had a substantial influence on the verdict and was sufficiently prejudicial to constitute reversible error").

[9]    *See supra* note 3.

[10]    *See, e.g.*, *Johnson v. J.G. Pattee, Inc.*, 426 P.3d 1096, 1100 n.2 (Alaska 2018) (noting fact witness's "understanding or experience would be permissible hybrid witness testimony").

[11]    *Thompson*, 290 P.3d at 400 (explaining "experience-based experts" familiar with specific facts of case are permitted to rely on "experience in developing an opinion . . . subjectively applying their practical experience to the particular facts").

[12]    *See, e.g.*, *Miller v. Phillips*, 959 P.2d 1247, 1250 & n.3 (Alaska 1998) (affirming trial court's ruling that treating physician was "hybrid witness" who did not need to be listed as expert witness on disclosures despite physician testifying about patient's injuries, treatment, and prognosis).

[13]    *See, e.g.*, *Getchell v. Lodge*, 65 P.3d 50, 56-57 (Alaska 2003) (affirming
(continued...)

fell into this category; he had personal knowledge of Humphrey's background and experience and of AAA Concrete's work, and he had specialized knowledge of the local industry from his long experience. His testimony was based on both his personal and specialized knowledge. We thus consider AAA Concrete's arguments in this light, assuming that Stoops's opinion testimony went beyond lay opinion testimony and into the realm of expert testimony as a hybrid witness, and we will not further discuss AAA Concrete's arguments that Stoops's testimony was improper lay opinion testimony.

We next note that AAA Concrete did not assert at trial that Stoops was not qualified to give the relevant expert witness testimony. AAA Concrete's relevant trial objection was that although Stoops was "knowledgeable," had "expert knowledge," and "appear[ed] to be well qualified," Humphrey had not designated Stoops as an expert witness or provided a required disclosure of Stoops's expected expert witness testimony. We address these points before returning to Stoops's expert witness qualifications.

AAA Concrete's argument that it was error to allow Stoops's testimony because Humphrey had not made required expert witness disclosures about the testimony has no merit. The rule requiring pretrial disclosure of expert witness testimony is limited to *retained* expert witnesses.[14] AAA Concrete expressly conceded at trial that Stoops was not a retained, paid expert witness,[15] and it appears Humphrey subpoenaed Stoops

---

[13]     (...continued)
trial court's ruling that police officer who investigated traffic accident was "hybrid witness" who could render expert opinions about accident despite being listed as only fact witness and not expert witness).

[14]     *See* Alaska R. Civ. P. 26(a)(2) (describing pretrial disclosure requirements for retained expert witnesses).

[15]     *See Thompson*, 290 P.3d at 400 (noting that unlike retained experts, hybrid witnesses are not presumed to be under retaining party's control).

to testify. The questions then are whether Humphrey's witness information was sufficient to give AAA Concrete adequate notice that Stoops might give hybrid expert witness testimony,[16] and, if not, whether AAA Concrete was so prejudiced that a reversal of the superior court's decision is justified. It appears from the record that Humphrey gave AAA Concrete his final witness list and related disclosures a few months before trial,[17] identifying Stoops as a witness and as someone with information about Humphrey's employment agreement with AAA Concrete. AAA Concrete does not assert that this information was untimely. It seems clear from the trial testimony that AAA Concrete was familiar with Stoops and his industry background; Humphrey's disclosures therefore were sufficient to put AAA Concrete on notice to make its own pretrial efforts to determine the information Stoops might present at trial. And we note that AAA Concrete did not ask the superior court for even a short continuance of the trial to obtain and present evidence challenging Stoops's qualifications or his testimony.

The nearest AAA Concrete came to challenging Stoops's qualifications was a foundational objection when a question was posed to him about whether Humphrey had the knowledge and experience to bid and plan concrete projects. Once a foundation was presented for Stoops's testimony, AAA Concrete did not further object about foundation or Stoops's qualifications. AAA Concrete nonetheless asserts to us that Stoops could not have been qualified as an expert witness at trial because he was biased in Humphrey's favor and lacked knowledge about concrete work. But AAA Concrete

---

[16]    *See Miller*, 959 P.2d at 1251 (holding record did not support claim of surprise when doctor who had not been identified as expert witness testified as hybrid witness).

[17]    *See* Alaska R. Civ. P. 26(a)(1)(B) (describing pretrial disclosure requirements for identifying individuals who may have discoverable information about disputed facts regarding specified subject matters).

made no bias argument in the superior court and it presents no legal basis to support a claim that an expert witness's testimony should be precluded on bias grounds rather than evaluated with bias in mind. Nor did AAA Concrete argue in the superior court that Stoops lacked personal knowledge to testify about concrete work. We will not further consider these arguments.

Humphrey responds to AAA Concrete by noting that Stoops had about 25 years of experience as a "senior project manager and estimator" in Alaska and that Stoops had estimated, bid on, and prepared the work for "construction projects that involve[d] the combination of dirt work, concrete work, and paving." Humphrey notes that Stoops was in the unique position of having known and worked with Humphrey for "quite awhile," both before and during Humphrey's tenure at AAA Concrete, and that Stoops's testimony focused "on his personal knowledge of interactions he had with the parties both generally and specifically in connection with a job, obtained by [Humphrey] for which AAA Concrete was a subcontractor to the general contractor that employed [Stoops]." We see no basis to conclude that Stoops was not qualified to render relevant expert opinions relating to his personal knowledge of the parties and their employment relationship, or that the superior court abused its discretion by allowing Stoops's opinion testimony.

**B.     The Superior Court Did Not Err When It Found And Enforced The Oral Employment Contract Between AAA Concrete And Humphrey.**

AAA Concrete contends that the superior court's order awarding Humphrey $36,000 was erroneous because the contract terms the court described were too indefinite to be enforced. AAA Concrete also asserts that Humphrey had worked only 17 weeks in 2016 and at most should receive 17 weeks of off-season pay. AAA Concrete further asserts that, to the extent there was an employment contract, Humphrey breached it "by committing acts which led to his firing" in October 2016. AAA Concrete additionally

contends for the first time on appeal that the employment contract alleged by Humphrey and determined by the court violated Alaska's Wage and Hour Act (AWHA).[18] AAA Concrete contends that we should find "plain error" on this basis and "remand for consideration of the [AWHA]."

### 1. The contract terms were sufficiently definite to be enforced.[19]

AAA Concrete cites *George v. Custer* for the proposition that a contract is enforceable only if its essential terms are sufficiently defined.[20] AAA Concrete asserts that "[t]he trial court found . . . [Humphrey] proved an 'oral contract' consistent with [Humphrey's] testimony" but that the court "never actually described the terms of the contract." In *George* we reversed the superior court's determination that a real estate option contract had existed because "the parties had not discussed a time frame for exercising the option, a definite purchase price, or terms for payments and security," leaving essential terms too uncertain for us to enforce the contract.[21] In contrast, the superior court in this case made express findings about the employment contract's terms reasonably based on the evidence and witness testimony. Although some trial testimony might have supported a different outcome, the court expressly found Humphrey and

---

[18]     *See* AS 23.10.050-.150 (establishing and safeguarding "minimum wage and overtime compensation standards for workers").

[19]     "We review the interpretation of a contract de novo when the underlying facts are undisputed," *Williams v. Abood*, 53 P.3d 134, 139 (Alaska 2002), and "under a clearly erroneous standard" when the factual findings are disputed, *Collins v. Blair*, 68 P.3d 1222, 1226 (Alaska 2002). We review factual findings for clear error, reversing only when left "with a definite and firm conviction on the entire record that a mistake has been made." *Id.* (quoting *City of Hydaburg v. Hydaburg Coop. Ass'n*, 858 P.2d 1131, 1135 (Alaska 1993)).

[20]     862 P.2d 176, 179 (Alaska 1993).

[21]     *Id.* at 177, 179-80.

Stoops more credible than Mitchell. AAA Concrete does not adequately point to any clearly erroneous factual findings, and we do not reweigh the evidence on appeal.[22]

AAA Concrete also challenges the superior court's determination that the agreement entitled Humphrey to a $10,000 bonus his first year. AAA Concrete seems to assert that, because Humphrey had written "25,000 EOY bonus" as part of his desired salary on his employment application, the whole concept of a bonus amounted only to Humphrey's wishes. AAA Concrete contends that the bonus agreement Humphrey described does not make "any sense" because he said that it was "totally [. . .] up to [Mitchell's] discretion" but also that it was based on "gross business" even though "there was no agreement to review the books of [AAA Concrete] at the end of the year."

But testimony other than Humphrey's supported the superior court's finding that he was entitled to a bonus; McDaniel affirmed that Humphrey and Mitchell had "talked about a year-end bonus," although she did not know an amount. And AAA Concrete slightly misrepresents Humphrey's testimony about his understanding of the bonus, in which he stated that for his first year he was to receive a guaranteed bonus of between $10,000 and $25,000. When AAA Concrete asked Humphrey whether the bonus amount fell to Mitchell's discretion, Humphrey responded: "Yes." This answer indicated that Mitchell could choose any amount between $10,000 and $25,000, the amounts agreed to in Humphrey's employment contract. The court's determination makes sense in light of the implied covenant of good faith and fair dealing to which

---

[22] *See, e.g.*, *Charles S. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 442 P.3d 780, 788, 793 (Alaska 2019) ("It is not our role to reweigh the evidence or to make credibility determinations . . . .").

"[e]very employment contract in Alaska is subject."[23] The superior court's finding was not clearly erroneous in light of testimony supporting the $10,000 figure.[24]

> **2.  The superior court's finding that AAA Concrete owed Humphrey $26,000 in off-season pay was not clearly erroneous and the court did not abuse its discretion by denying reconsideration of the issue.[25]**

AAA Concrete contends that the superior court erred by denying its motion for reconsideration regarding how many weeks of pay Humphrey was owed and by finding that Humphrey was entitled to 26 weeks of off-season pay. AAA Concrete characterizes the court's finding that Humphrey was entitled to $26,000 for the off-season as a "credit for 26 weeks instead of 17 weeks at $1[,]000 [per] week in 2016."

---

[23]    *See Crowley v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 253 P.3d 1226, 1230 (Alaska 2011).

[24]    AAA Concrete also contends that the contract terms the court found "cannot square with" the additional "$500 a month for [Humphrey's] truck, a gas card, a telephone and business cards." Humphrey received these benefits while he was working for AAA Concrete, the parties did not dispute that they were terms of his employment agreement, and they do not seem to interact with the disputed contract terms. Absent any citation to authority or explanation how we should treat fringe benefits outside of salary agreements, we consider this argument insufficiently briefed and therefore waived. *Cf. Ragland v. Morrison-Knudsen Co.*, 724 P.2d 519, 522-23 (Alaska 1986) (defining wages for workers' compensation to "include all items of compensation or advantage agreed upon in a contract of hiring which are measurable in money, whether in the form of cash or as an economic gain to the employee"). *But cf.* EMPLOYER'S GUIDE TO FRINGE BENEFIT RULES §§ 430, 462 (David Slaughter ed., 2016) (reimbursing or compensating employees for business use of company vehicles and cell phones "may be excludable from the employee's gross income as a working condition fringe benefit").

[25]    *See Gavora, Inc. v. City of Fairbanks*, 502 P.3d 410, 415 (Alaska 2021), ("We review denial of a motion for reconsideration for abuse of discretion.").

But, as the court explained, "this argument is contrary to the [c]ourt's finding that the parties negotiated an amount for each year, amortized over an expected timeframe."

AAA Concrete suggests that Humphrey had conceded at trial to only being entitled to 17 weeks' pay in the off season. But the testimony to which AAA Concrete points was clearly about Humphrey having worked 17 weeks during the 2016 construction season due to his later start date that season and thus being owed 43 weeks' pay rather than 52 as initially alleged in his complaint. AAA Concrete recognizes this elsewhere in its briefing.

The superior court could have been clearer in its order, but did not abuse its discretion by denying reconsideration. Evidence supports the $1,000 weekly payment arrangement Humphrey described, and nothing supports AAA Concrete's suggestion that Humphrey agreed to work 17 weeks at $1,000 weekly, be paid $1,000 weekly in the off-season for another 17 weeks, receive no pay for 9 weeks, then start working again the next season for $1,000 weekly.

### 3. The superior court's finding that Humphrey performed his contractual duties was not clearly erroneous.

AAA Concrete next contends that Humphrey breached the employment contract and that the superior court's finding he had "fully performed his contract duties in 2016-17 should be reversed." AAA Concrete asserts: "The court accepted that [Humphrey] was fired for cause. It found that he was fired at the end of the season and did not find any facts contrary to good cause for termination, namely disloyalty, dishonesty, and stealing from the company." AAA Concrete provides no supporting citation, and nothing in the record appears to support the assertion. The court found that Mitchell paid Humphrey "for his work, firing him only at the end of the season when [Mitchell] believed he would no longer be obligated to [Humphrey]."

AAA Concrete contends that Humphrey's alleged dishonesty and disloyalty amounted to a material breach, discharging AAA Concrete from any contractual obligations. AAA Concrete points to testimony about a supposedly defamatory "missing letter" Humphrey allegedly sent to AAA Concrete's "major customers,"[26] to AAA Concrete's trial brief asserting Humphrey was fired for cause, and to testimony, alleged without citation to the record, that "Humphrey's job performance was not as awesome as he claimed to [Mitchell] it would be."

AAA Concrete further asserts that the superior court erred by enforcing "the 2016 employment agreement against AAA Concrete, but not [Humphrey]" because the court did not require Humphrey to have "complete[d] his duties all the way to the end of the 2016 contract on" April 15, 2017. Humphrey effectively explains this argument's fallacy: The construction season ended around October 15, and at trial no one asserted that Humphrey was expected to work between that date and the beginning of the next season. Even if Humphrey were fired for cause, he "still [would be] entitled to the remainder of his payment for fully performing in the 2016 construction season."

AAA Concrete's reply continues to assert that Humphrey conceded he was fired for cause without pointing to any statement beyond his acknowledgment that he had been "terminated." Although some testimony tends to indicate that Humphrey might have been fired for cause — having AAA Concrete's employee help with a personal

---

[26] The superior court heard testimony about a letter allegedly sent to AAA Concrete's clients on Humphrey's attorney's "letterhead defaming . . . AAA Concrete or 'liening' its major customers." Mitchell and another AAA Concrete witness testified to having seen it, but AAA Concrete was unable to produce it at trial. Representatives for the two companies Mitchell claimed had received the letter testified that they did not recall receiving or seeing the letter, although one said he had heard from Humphrey that such a letter might be sent. Even had this letter been presented as evidence, it could not have supported Mitchell's justification that he terminated Humphrey for cause; the letter was alleged to have been sent after Humphrey's termination.

project, poor quality of work, and talking negatively about the company to others — the superior court expressly found Humphrey's testimony more credible. And three former AAA Concrete employees testified about Humphrey's work ethic and skills. One testified that Humphrey was more consistent about showing up to work than Mitchell and that Humphrey used his connections to bring AAA Concrete more work. The second testified that Humphrey knew what he was doing and that he was "at a level that [construction workers] get to if [they] stay in there." The third did not recall Humphrey ever complaining about working at AAA Concrete. The court's finding was not clearly erroneous in light of other prevailing testimony.

### 4. AAA Concrete's assertion that the employment contract may have violated the AWHA has no merit.[27]

AAA Concrete argues for the first time on appeal that the contract as determined by the superior court does not comply with the AWHA and the court's decision thus constitutes plain error. The AWHA establishes "minimum wage and overtime compensation standards for workers,"[28] although it has exceptions, including for an individual employed in an "executive, administrative, or professional capacity."[29] AAA Concrete appears to contend that because Humphrey "did not claim exempt managerial status," he was limited to an hourly wage calculated on $1,000 weekly and

---

[27] "Points not raised in the court below are ordinarily considered waived and will not be considered on appeal, except where plain error has been committed." *Kenai Peninsula Borough v. English Bay Vill. Corp.*, 781 P.2d 6, 9 (Alaska 1989), *disapproved of on other grounds in Hatten v. Hatten*, 917 P.2d 667, 670-71 (Alaska 1996). "Plain error exists where an obvious mistake has been made which creates a high likelihood that injustice has resulted." *Id.* (quoting *Miller v. Sears*, 636 P.2d 1183, 1189 (Alaska 1981)).

[28] AS 23.10.050.

[29] AS 23.10.055(a)(9)(A); *see Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595, 599-600 (Alaska 2021) (discussing scope of AS 23.10.055(a)(9)(A)).

overtime worked. But Mitchell testified that Humphrey was a salaried employee not entitled to overtime, and AAA Concrete fails to point to anywhere in the record where Humphrey disclaimed "exempt managerial status." More importantly, the AWHA sets minimum compensation; an employer can agree to pay *more* than the minimum compensation without violating the AWHA.[30] AAA Concrete's attempt to limit Humphrey's compensation to the AHWA's minimum is specious.[31]

Because no obvious mistake has been made — let alone a mistake resulting in a "miscarriage of justice"[32] — the superior court did not commit plain error.

## IV. HUMPHREY'S CROSS-APPEAL

### A. The Superior Court Did Not Err When It Ruled Against Piercing The Corporate Veil And Dismissed Mitchell From The Proceedings.

Although Humphrey named both Mitchell and AAA Concrete in the complaint, Mitchell did not seek to dismiss the claims against him individually until the second day of trial. Humphrey challenges the superior court's decision on reconsideration dismissing his claims against Mitchell individually for three reasons. Humphrey contends that: the court applied the incorrect "legal standard applicable to piercing the corporate veil"; the court failed "to make a factual determination whether [Mitchell], in his individual capacity, was a party to the contract"; and Mitchell waived any defense to personal liability by not raising the issue prior to trial.

We first address Humphrey's contention that Mitchell waived any defense that he was not a party to the contract by failing to raise the defense before trial.

---

[30] *See* AS 23.10.050.

[31] AAA Concrete conceded in its briefing and at oral argument that it does not know which party would benefit if the AWHA applied, evidencing that there is no clear prejudice or high likelihood of injustice if we do not remand for further findings.

[32] *See Kenai Peninsula*, 781 P.2d at 9.

Humphrey explains that Mitchell was named in the complaint and had sufficient notice of the intent to hold him personally liable. Humphrey appears to claim that Mitchell was required under Alaska Civil Rule 8(c) to "set forth affirmatively any matter constituting an avoidance or affirmative defense," including his defense to piercing the corporate veil.[33] Humphrey extrapolates that the issue thus was not properly raised in Alaska Civil Rule 77(k) reconsideration request.

AAA Concrete responds that Humphrey failed to meet his burden of pleading and arguing at trial that the corporate veil should be pierced to hold Mitchell individually liable. AAA Concrete correctly points out that in *Diamond v. Platinum Jaxx, Inc.* we explained that a party must adequately give notice of a veil-piercing claim in the pleading and that it is not an affirmative defense.[34] AAA Concrete argues that because "Humphrey never even did so much as send a letter that he was going to pursue the theory," he never properly raised the issue, and "Mitchell was under no obligation to raise the theory himself." AAA Concrete points out that the superior court recognized the parties had discussed veil piercing only superficially and that Mitchell was required to do nothing more than deny personal liability in his answer.

"In general, courts seek to recognize and uphold 'the principles that the corporation exists as a separate legal entity and that owner liability for the debts of the

---

[33] Humphrey also "incorporates by reference the argument included in" his opposition to Mitchell's reconsideration motion. As AAA Concrete correctly points out, we consider the practice of incorporating arguments from other documents inadequate briefing and this extraneous argument thus is waived. *See McCormick v. Chippewa, Inc.*, 459 P.3d 1172, 1180 & nn.25-26 (Alaska 2020) (explaining Alaska Appellate Rule 212(c) prohibits such practices).

[34] *See* 446 P.3d 341, 345-46 (Alaska 2019) (discussing intricacies of notice and pleading requirements to pierce corporate veil).

corporation is limited.' "[35] Courts therefore will pierce the corporate veil and assign individual liability "only in exceptional circumstances."[36] We recognize *both* the "misconduct standard"[37] and the "mere instrument test"[38] as viable methods for deciding whether circumstances exist to warrant piercing the veil.[39] For the superior court to reach these legal tests, however, a party must have adequately raised the issue of piercing the corporate veil, "a question of law we review de novo."[40]

Humphrey did not address veil piercing in his complaint, but we have recognized that a plaintiff does not have an absolute obligation to affirmatively plead this theory to raise the issue at trial.[41] Humphrey named Mitchell as a defendant and made

---

[35] *L.D.G., Inc. v. Brown*, 211 P.3d 1110, 1125 (Alaska 2009) (quoting *Pyramid Printing Co. v. Alaska State Comm'n for Hum. Rts.*, 153 P.3d 994, 1000 (Alaska 2007)).

[36] *Id.*

[37] Under the "misconduct standard" a court may pierce the corporate veil "if the corporate form is used to defeat public convenience, justify wrong, commit fraud, or defend crime." *Id.* (quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)). Mitchell and AAA Concrete were stronger advocates for this test.

[38] Under the "mere instrument test" there are "six primary factors to evaluate the rationality of imposing personal liability on the shareholder." *Id.* All six factors need not "be satisfied before instrumentality can be found." *Id.* at 1126 (quoting *Nerox Power Sys., Inc. v. M-B Contracting Co.*, 54 P.3d 791, 802 (Alaska 2002)). Humphrey suggests this is the more favored test.

[39] *Id.* at 1125-26; *see, e.g.*, *Diamond*, 446 P.3d at 343 n.2 (recognizing both tests for holding "individual owners liable for the acts of the corporation").

[40] *Diamond*, 446 P.3d at 344.

[41] *See id.* at 345-46 (discussing minimum notice requirements for veil piercing from *L.D.G.* in which we held that company's sole shareholder had adequate notice he

(continued...)

clear an intent to hold him personally liable. Had Humphrey indicated before trial his intent to pierce the corporate veil, that likely would have been adequate notice under *L.D.G., Inc. v. Brown*.[42] But Humphrey did not raise his veil-piercing theory before or during trial, and Mitchell was not required to raise the defense until Humphrey indicated that he would proceed under that theory.[43] For that reason, we reject Humphrey's argument that Mitchell's motion to be dismissed as a defendant — effectively his assertion of a defense to piercing the corporate veil and imposing personal liability on him for AAA Concrete's obligations — was waived as untimely.

Although the superior court's order lacked clear findings of fact or conclusions of law, the court sufficiently explained its reasoning for dismissing Mitchell. The court's explanation gives us "a clear understanding of the basis of the trial court's decision," and no remand for findings of fact and conclusions of law is necessary.[44] Even viewed in the light most favorable to Humphrey,[45] given the exceptional

---

[41]   (...continued)
faced personal liability after he was individually named in complaint and plaintiff indicated six months before trial "that he was prepared to argue" for veil piercing (quoting *L.D.G.*, 211 P.3d at 1124)).

[42]   *See* 211 P.3d at 1124-25.

[43]   *See, e.g.*, *Diamond*, 446 P.3d at 345-46 (putting burden on party requesting to pierce veil to give opposing party adequate notice of intent).

[44]   *See id.* at 345 (quoting *Beaulieu v. Elliott*, 434 P.2d 665, 670 (Alaska 1967)) (remanding for findings of fact and conclusions of law was not necessary for us to review superior court's order prohibiting veil piercing theory because court had explained theory was not pleaded and would be prejudicial).

[45]   *See L.D.G.*, 211 P.3d at 1117, 1125 (reviewing motion for directed verdict for insufficient evidence to pierce veil under de novo review and "in the light most favorable to the non-moving party" (quoting *Holiday Inns of Am., Inc. v. Peck*, 520 P.2d (continued...)

circumstances demanded for veil piercing we affirm the court's order dismissing Mitchell. Under the mere instrument test, factors that weigh in favor of piercing the veil include that Mitchell owns almost all of AAA Concrete's stock, caused its incorporation, and is the only officer or director discussed in the record. But no evidence suggests "the corporate form has been abused by" Mitchell.[46] Some evidence suggested that AAA Concrete was in a tight financial situation. But other evidence demonstrated AAA Concrete was not a "mere instrument" for Mitchell: Mitchell had a separate personal bank account, AAA Concrete had a credit line for paying employees, AAA Concrete could afford to hire a general manager and move to a new office in 2019, and nothing specifically supported that AAA Concrete was "grossly undercapitalized" or that Mitchell was using corporate property or funds for his own benefit. The superior court did not err by dismissing Mitchell from the proceedings.

## V. CONCLUSION

For the reasons discussed above, we AFFIRM the superior court's decision in all respects.

---

[45] (...continued) 87, 92 (Alaska 1974))).

[46] *See Gold Dust Mines, Inc. v. Little Squaw Gold Mining Co.*, 299 P.3d 148, 169 (Alaska 2012) (quoting *Murat v. F/V Shelikof Strait*, 793 P.2d 69, 76 (Alaska 1990)) (recognizing abuse of corporate form as primary concern when piercing corporate veil).